J-S16033-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD CHRISTOPHER FOLEY | : | |
| | : | |
| Appellant | : | No. 1394 MDA 2024 |

Appeal from the Judgment of Sentence Entered January 22, 2024
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-MD-0001157-2023

BEFORE:    LAZARUS, P.J., BOWES, J., and LANE, J.

MEMORANDUM BY LANE, J.:                                    **FILED JULY 10, 2025**

Edward Christopher Foley ("Foley") appeals from the judgment of sentenced imposed following his nonjury trial conviction of indirect criminal contempt[1] ("ICC") of a Protection From Abuse[2] ("PFA") order.  We affirm.

In May 2021, the trial court entered a temporary PFA order against Foley, and in favor of his wife, Cortney Wilson ("Wilson"), after he assaulted her.  Related to this same incident, Foley pleaded guilty to simple assault and received a sentence of one to two years' imprisonment.[3]  In 2022, Foley also

---

[1] **See** 23 Pa.C.S.A. § 6114(a).

[2] **See** 23 Pa.C.S.A. §§ 6101-6122 (Protection from Abuse Act ("PFA Act")).

[3] Foley also had charges at two unrelated dockets, and for all three cases, received an aggregate sentence of four to eight years' imprisonment.  **See** Trial Court Opinion, 10/31/24, at 1 n.1.

pleaded guilty to one count of ICC for violating the temporary PFA, and received a sentence of one to six months' imprisonment. **See** Trial Court Opinion, 10/31/24, at 2 n.2.

On December 14, 2022, the trial court, with Foley's agreement, entered a final PFA order, which provided Foley "shall not abuse, harass, stalk, threaten, or attempt or threaten to use physical force" against Wilson. Petition for ICC, 8/25/23, Exhibit A at unnumbered 2. The PFA order also awarded temporary exclusive custody of Foley and Wilson's young child ("Child") to Wilson. Furthermore, the order set forth the relevant provisions:

> [Foley] may have a video call with [Child] once every other week. [Foley] may not ask questions about [Wilson] **or make any comments about [Wilson] during such video calls**, or [Wilson] will end the calls. . . .
>
> [Foley] may contact [Wilson] by email, no more than once a week . . . to discuss the care and custody of [Child]. Such messages must be peaceful, non-harassing, and strictly related to the care and custody of [Child], or they shall be construed as a violation of this order. . . .

**Id**. (emphasis added). The PFA order was in effect for two years.

In August 2023, the Commonwealth filed an ICC charge against Foley, based on a video call between him and Child, while Wilson sat next to Child. At the time of the call, Foley was in prison and Child was three years old. The call was recorded and later played at trial. The video showed the following exchange:

[Foley]: Where are you at?

[Wilson]: That's none of your business[.]

[Foley]: Actually, it is my business, he's my son[.]

[Wilson]: No, actually where [we are] at is not. The order of my PFA, you do not need to know where we are at[.]

[Foley: Wilson], fuck you[.]

Trial Court Opinion, 10/31/24, at 5 (quotation marks omitted).[4]

Foley's charge of ICC proceeded to an evidentiary hearing. Wilson testified that during the video call, Foley asked Child where he was, and this question made her feel uncomfortable. Wilson also testified that Foley addressed her, stating he had a right to know where Child was, and he said, "[F]uck you," to her.[5] N.T., 11/14/223, at 14, 19.

Foley testified in his defense to the following. He believed he had a right, under the custody orders, to know where Child lived and he was not "out of line" in asking Child where he was. *Id*. at 32-33. Nevertheless, during the call, Foley's question was not "about where he was living," but rather simply where he was, because he appeared to be sitting on "a makeshift bed"

_____

[4] Neither the transcript of the ICC hearing nor the certified record included a transcript of the video call. Nevertheless, neither party disputes the trial court's summary of the conversation on the call.

[5] We reject Foley's argument on appeal, which he had also made at the hearing, that it was "unclear" whether Wilson "was actively logged onto the video conference when" he made this comment. Foley's Brief at 16; *see also* N.T., 11/14/23, at 17. The parties discussed this issue at trial, and in response, Wilson clearly testified she was present on the call when Foley told her, "[F]uck you." N.T., 11/14/23, at 19.

and this was not "the norm." *Id*. at 33. Foley admitted that when he said, "Fuck you, [Wilson,]" he was not addressing Child. *Id*. at 34.

The trial court found Foley guilty of ICC, concluding he violated the PFA provision that he not harass Wilson, and reasoning Wilson had a right to "cut [Foley] off because she had every right to protect the location where she [was] living." *Id*. at 35-36.

On January 16, 2024, the court imposed a sentence of three to six months' incarceration, to run consecutively to any other sentence.

Subsequently, the court trial reinstated Foley's direct appeal rights *nunc pro tunc*, following Foley's filing of a timely Post Conviction Relief Act[6] petition. Foley thus filed a notice of appeal on September 18, 2024.[7] He and the trial court have complied with Pa.R.A.P. 1925.

_____

[6] *See* 42 Pa.C.S.A. §§ 9541-9546.

[7] We observe the trial court reinstated Foley's direct appeal rights on July 30, 2024. Foley thus generally had thirty days to file his notice of appeal. *See Commonwealth v. Wright*, 846 A.2d 730, 734 (Pa. Super. 2004) (stating that when the trial court reinstates an appellant's appeal rights, the appellant must file the appeal within thirty days of reinstatement). Foley filed a notice of appeal more than thirty days thereafter. However, the court's order did not inform Foley, as required, of the thirty-day deadline. *See id*. at 735 (stating that if a court restores a defendant's direct appeal rights *nunc pro tunc*, it must inform them that they must file the appeal within thirty days). We construe this lack of notice as a breakdown in the court's operations, and thus decline to find untimeliness in Foley's appeal. *See Commonwealth v. Patterson*, 940 A.2d 493, 498 (Pa. Super. 2007) (explaining that while we generally strictly construe time limitations for filing a notice of appeal, we may overlook any untimeliness when the trial court has failed to advise or misadvised an appellant of their appeal rights).

Foley presents two issues for our review:

> a. Whether the evidence was sufficient to prove that the contact between [Wilson] and [Foley] was in violation of the language of the underlying [PFA] Order which permitted limited contact between the parties?
>
> b. Whether [Foley's] conduct was abusive, harassive [*sic*], or threatening in nature?

Foley's Brief at 4.

Although Foley presents two questions, he discusses them together in the argument section of his brief, and thus we review them as one.[8] Foley challenges the sufficiency of the evidence to the establish the wrongful intent element of ICC.[9] We first note:

> The enforcement of a PFA order, through a finding by the trial court of [ICC] is criminal in nature because the Commonwealth is required to prove the elements of the indirect criminal contempt, and the statutorily prescribed punishment for a violation of a PFA order may include, *inter alia*, incarceration or probation.

***Commonwealth v. Bartic***, 303 A.3d 124, 131 (Pa. Super. 2023) (footnote omitted).

> We consider the applicable standard of review:
>
> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an

---

[8] We remind counsel that the argument section of an appellate brief "shall be divided into as many parts as there are questions to be argued." Pa.R.A.P. 2119(a).

[9] Foley does not challenge the other elements of ICC.

appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Smith***, 288 A.3d 126, 131 (Pa. Super. 2022) (citations omitted). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Johnson***, 236 A.3d 1141, 1152 (Pa. Super. 2020) (*en banc*) (citation omitted).

This Court has explained:

A charge of [ICC] consists of a claim that a violation of an order or decree of court occurred outside the presence of the court. Where a PFA order is involved, an [ICC] charge is designed to seek punishment for violation of the protective order.

* * * *

To establish [ICC], it must be shown that 1) the order was sufficiently clear to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act must have been one prohibited by the order; and 4) **the intent of the contemnor in committing the act must have been wrongful**.

***Smith***, 288 A.3d at 131 (citation omitted and emphasis added).

As stated above, the PFA order prohibited Foley from harassing Foley. The PFA Act does not define the term "harass," but provides that any term not defined in the Act shall have the meaning given to it in the Pennsylvania

Crimes Code.[10]  **See** 23 Pa.C.S.A. § 6102(b).  The Crimes Code, in turn, defines harassment in pertinent part as follows: "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person . . . communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures."  18 Pa.C.S.A. § 2709(a)(4).

On appeal, Foley challenges the trial court's finding that his comment to Foley, "Fuck you," was "harassing and abusive conduct in violation of the PFA order."  Foley's Brief at 16 (unnecessary capitalization omitted).  Foley maintains the evidence did not establish the element of wrongful intent.  In support, he contends: he was concerned because it appeared Child was on "a makeshift bed, and this was not normal;" "Wilson interjected into the conversation" and they "had a brief exchange of angry words;" he was incarcerated during the call and "Wilson had the discretion to end the call at any given time, which she did;" and thus he did not pose an immediate threat to her.  **See id**. at 12, 16-17, 20.

Second, Foley avers the Pennsylvania courts have previously addressed the "f-word," which "has become a significant part of the American culture." **Id**. at 17.  Foley cites several cases in which Pennsylvania appellate courts have discharged criminal convictions where the defendant used this word.

---

[10] **See** 18 Pa.C.S.A. §§ 101-9546.

- 7 -

*See id*. at 17-19 (*citing **Commonwealth v. Hock***, 728 A.2d 943, 946 (Pa. 1999) (concluding the defendant's comment, "F___ you, a_____," to a police officer did not meet the "fighting words" element of a disorderly conduct charge, where "a trier of fact could not reasonably find [the] comment risked an immediate breach of the peace"); ***Commonwealth v. Kelly***, 758 A.2d 1284, 1288 (Pa. Super. 2000) (concluding the defendant's phrase, "Fuck you, asshole," to municipal employee was not obscene under the disorderly conduct statute); ***Commonwealth v. Fenton***, 750 A.2d 863, 864 (Pa. Super. 2000) (concluding the defendant's threats, during a telephone call to an insurance adjustor, to shoot and kill people, including a congressperson and his aide, and employees at the insurance company and at the garage who were repairing his vehicle, were not "lewd, lascivious or indecent" under the then criminal offense of harassment and stalking by communication)). Foley avers these cases establish "that context is important in determining the actor's intent," and here, he did not: "state any threatening, derogatory, or vulgar language to" Wilson; "gesture or otherwise behave in a threatening manner towards" Wilson; or pose an immediate threat because he was incarcerated during the call. *Id*. at 18, 20.

At the hearing, the trial court considered the paragraph of the PFA order pertaining to video calls with Child — which provided that during such calls, Foley may not ask questions nor ***make any comments*** about Wilson. ***See*** N.T., 11/14/23, at 23. Furthermore, the trial court found Foley's comment,

"Fuck you," violated the general prohibition against harassing Wilson. ***Id***. at 35. In its opinion, the trial court concluded the Commonwealth established wrongful intent: "[Foley's] statement while on the recorded video call with [Wilson], in the presence of their three-year-old son, clearly establishes [Foley's] wrongful intent. [The] statement '[Wilson], fuck you' was directed at [Wilson] and was clearly stated with intent to further harass and/or threaten [Wilson]." Trial Court Opinion, 10/31/24, at 10. Additionally, the court "**considered the content and context** of the . . . video call and surrounding factors such as [Foley's] criminal convictions for simple assault and a prior ICC against [Wilson] in determining [Foley] acted with wrongful intent." ***Id***. at 11 (emphasis added).

After reviewing the record in the light most favorable to the Commonwealth, we determine the evidence was sufficient to prove wrongful intent beyond a reasonable doubt. ***See Smith***, 288 A.3d at 131. We agree with Foley's argument that in reviewing the evidence for wrongful intent for ICC for a PFA violation, we consider not only the statement made, but also its context. We also reiterate that an ICC "charge is designed to seek punishment," not for a Crimes Code offense, but "for violation of the protective order." ***Smith***, 288 A.3d at 131. Here, the trial court considered the context in which Foley made the comment to Wilson. First, the PFA order clearly provided that during video calls with Child, Foley "may not ask questions about [Wilson] or make any comments about" Wilson. Petition for ICC, 8/25/23,

Exhibit A at unnumbered 2. Although Foley argues he was not seeking Child and Wilson's address but rather merely asking where Child was, the trial court found Wilson, who was the protected party under the PFA order, had a right "to protect the location where she [was] living." N.T., 11/14/23, at 36. We emphasize Foley's comment, "[Wilson], fuck you" was in direct response to Wilson telling him that under the PFA order, she did not have to disclose their location. Trial Court Opinion, 10/31/24, at 5. Furthermore, the trial court took into account the "surrounding factors" of Foley's prior convictions of simple assault and ICC for violating the same PFA matter; in both instances, Wilson was the victim. Trial Court Opinion, 10/31/24, at 10. 11.

Accordingly, we reject Foley's argument that the trial court failed to consider the context in which he made the comment to Wilson. We do not disturb the court's finding that the Commonwealth's evidence showed Foley acted with wrongful intent, and thus we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/10/2025