J-S10042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EMANUEL NATHANIEL SOTO | : | |
| | : | |
| Appellant | : | No. 787 MDA 2024 |

Appeal from the Judgment of Sentence Entered April 10, 2024
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0000689-2023

BEFORE: BOWES, J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED: AUGUST 27, 2025**

Emanuel Nathaniel Soto ("Soto"), a juvenile tried as an adult, appeals from the judgment of sentence following his jury convictions for two counts each of first-degree murder, second-degree murder, third-degree murder, aggravated assault, robbery, conspiracy, and one count of possession of an instrument of crime.[1] After careful consideration, we affirm.

We take the underlying facts and procedural history in this matter from the trial court's opinion and our independent review of the certified record. Soto's convictions arose out of a plot between Soto and several conspirators for robbing a drug dealer. *See* Supplemental Trial Court Opinion, 6/16/25, at 1.

---

[1] 18 Pa.C.S.A. §§ 2502(a), (b), (c), 2702(a)(1), 3701(a)(1)(i), 903(a)(1), 907(a).

In March 2022, Darrian Kreitz ("Kreitz") spoke with a friend, Cory Rodriguez ("C. Rodriguez"), about robbing Marques Sudler ("Sudler"), from whom Kreitz had previously purchased drugs. *See id*. at 2. Kreitz had purchased drugs from C. Rodriguez's home on Gordon Street in Reading. *See id*. Through C. Rodriguez, Kreitz had become acquainted with both Jonathon Rodriguez ("J. Rodriguez"), from whom Kreitz also purchased drugs, and Soto ("Soto"). *See id*. The men had previously spoken about setting up robberies. *See id*.

In furtherance of the plan, Kreitz began a lengthy text exchange with Sudler asking to purchase five pounds of marijuana. *See id*. at 3. Simultaneously, Kreitz engaged in a text exchange with C. Rodriguez, in which they planned to rob Sudler. *See id*.[2] C. Rodriguez sent Kreitz to the Gordon Street house, where Kreitz continued to plan the robbery with J. Rodriguez and Soto. *See id*. Julian Grey ("Grey") drove Kreitz to Gordon Street and agreed to act as the getaway driver. *See id*. He remained in the car while Kreitz went into the residence. *See id*.

Kreitz, J. Rodriguez and Soto discussed the robbery. *See id*. at 3. Meanwhile, Sudler picked up a friend, Taurice Green ("Green") and informed his girlfriend, Ianna Richardson they were going to see some "white boy" on

_____

[2] This was not the first time Kreitz, and C. Rodriguez had planned robberies; on multiple occasions they had summoned drug dealers to vacant addresses and robbed them. *See id*.

Miltimore Street; Sudler left with Green to go to the meeting, texting with the "white boy," *i.e.* Kreitz as he went. ***See id***. at 3-4.

On J. Rodriguez's instruction, Kreitz told Sudler to drive to the back of the Gordon Street house; the three men left the house with Soto carrying a black shotgun and J. Rodriguez carrying a pistol with a switch on the back. ***See id***. at 4. Kreitz knew that there were several guns at the residence, including the black shotgun, a tannish brown pistol with an extended magazine, and another gun with an extended clip; he had previously seen Soto in possession of the shotgun and J. Rodriguez with several firearms. ***See id***.

Kreitz told J. Rodriquez and Soto that another person was coming with Sudler. ***See id***. J. Rodriguez instructed Kreitz to go outside when Sudler arrived and open Sudler's car door, then J. Rodriguez and Soto would show themselves, and Kreitz would point his gun at Sudler and tell him to put the car in park. ***See id***. J. Rodriguez warned the others that if Sudler started to reach for a weapon, he (J. Rodriguez) was going to start shooting. ***See id***.

Kreitz informed Sudler of the meeting spot, and Sudler contacted him when he arrived, flashing the lights of his car when he observed Kreitz. ***See id***. at 4-5. Kreitz got to Sudler's car. J. Rodriguez and Soto then came up to the car with masks on and J. Rodriguez pointed his gun at Sudler. ***See id***. at 5. The men started shooting and Kreitz, who did not observe either Sudler

or Green with a gun, ran to the getaway vehicle and he and Grey fled. *See id*. at 5.

The next day, J. Rodriguez and Soto met with C. Rodriguez and discussed the robbery in detail. *See id*. at 6. J. Rodriguez did most of the talking, telling C. Rodriguez that both Sudler and Green had guns, so he pulled his gun out and because Sudler was not following his instructions, he and Soto began shooting. *See id*. at 7.

J. Rodriguez also contacted his friend, Joellius Medina ("Medina"), who lived in Texas, and asked to stay with him. *See id*. J. Rodriguez had texted Medina a picture of a Glock firearm with a switch attachment and, in later texts, told Medina he had shot a man. *See id*. J. Rodriguez also sent Medina a newspaper article that discussed the homicides. *See id*.

A day or so later, C. Rodriguez paid an associate of his, Antonio,[3] to inspect the Gordon Street house for damages. *See* N.T., 2/12-21/24, at 1350-58. Antonio brought his girlfriend, Jessica Echevarria ("Echevarria") with him and she inspected the house. *See id*. They discovered an individual named "Coco"[4] living in the backyard and, at C. Rodriguez's request drove Coco to meet C. Rodriguez at a restaurant. *See id*. at 1358-59. Echevarria was nervous about the meeting and persuaded Antonio to make a secret audio

_____

[3] Antonio's last name is not in the certified record.

[4] Antonio did not testify at trial; Echevarria did not provide any further information regarding Coco.

- 4 -

recording of his conversation with C. Rodriguez; she later gave the recording to the police. **See id**. at 1358-61.

During the investigation of the murder, the police located videos showing parts of the incident. **See id**. at 5-8. They also recovered messages among the parties, the victims, and other third parties discussing the incident, and photographs on social media showing both J. Rodriguez and Soto brandishing weapons like those used in the shooting. **See id**.

Prior to trial, Soto filed a motion to sever his case from that of J. Rodriguez. The Commonwealth filed motions *in limine* seeking to admit at the joint trial the statements made by J. Rodriguez to C. Rodriguez, and evidence of the men's prior possession of firearms. The trial court denied Soto's motion to sever and granted the Commonwealth's motions. Trial began in mid-February 2024.

At trial, Soto's counsel asked Echevarria, who was not present when Antonio recorded his conversation with C. Rodriguez, to recite what she heard on the recording because it was difficult to hear it in the courtroom. **See id**. at 1362. The Commonwealth did not object to the question, and Echevarria testified C. Rodriguez asked Antonio if he wanted to be paid in drugs or cash, and Antonio replied he did not use drugs. **See id**. Soto's counsel then asked Echevarria, "What does this mean to you?" **Id**. at 1363. The Commonwealth objected to the relevance of Echevarria's interpretation. **See id**. The trial

court asked counsel to rephrase the question and ultimately sustained the objection. *See id*. at 1363-64.

The jury convicted Soto of all charges. The trial court sentenced Soto to an aggregate sentence of seventy-seven and one-half to life in prison. Soto filed a timely post-sentence motion, which the trial court denied. This appeal followed.[5]

On appeal, Soto raises four questions for our review:

1. Whether the trial court erred and abused its discretion in denying [Soto's motions to sever and supplemental motion *in limine*] which resulted in unfair prejudice to [Soto]?

2. Whether the trial court erred and abused its discretion in granting the Commonwealth's motion *in limine* to admit a September 25, 2021, video clip over [Soto's] objection . . . which resulted in unfair prejudice to [Soto]?

3. Whether the trial court erred and abused its discretion in sustaining the Commonwealth's objection to witness['s] answers regarding a phone call . . . which resulted in unfair prejudice to [Soto]?

4. Whether the at trial was insufficient with regards to the specific intent to kill element of the first[-]degree murder charges?

Soto's Brief at 4-5 (capitalization regularized).

In his first issue, Soto challenges the denial of his motion to sever his trial from that of J. Rodriguez. *See* Soto's Brief at 18-19. Our Supreme Court has stated:

> Severance questions fall within the discretion of the trial judge and an order denying severance will not be overturned on appeal

_____

[5] Soto and the trial court complied with Pa.R.A.P. 1925.

- 6 -

absent an abuse of discretion. ***When conspiracy is charged, a joint trial generally is advisable.*** In ruling upon a severance request, the trial court should consider the likelihood of antagonistic defenses. A claim of mere hostility between defendants, or that one defendant may try to exonerate himself at the expense of the other, however, is an insufficient basis upon which to grant a motion to sever. Indeed, this Court has noted that the fact that defendants have conflicting versions of what took place, or the extents to which they participated in it, is a reason for rather than against a joint trial because the truth may be more easily determined if all are tried together. Instead, severance should be granted only where the defenses are so antagonistic that they are irreconcilable—*i.e.*, the jury essentially would be forced to disbelieve the testimony on behalf of one defendant in order to believe the defense of his co-defendant. ***Thus, a defendant claiming error on appeal has the burden of demonstrating that he suffered actual, not speculative, prejudice because of the ruling permitting a joint trial.***

***Commonwealth v. Brown***, 925 A.2d 147, 161-62 (Pa. 2007) (internal citations, quotation marks, and footnote omitted, emphases added).

Soto does not claim that he and J. Rodriguez had antagonistic defenses. ***See*** Soto's Brief at 18-19. Rather, in his brief argument, he maintains severance was necessary because J. Rodriguez "confessed" and discussed both his participation in the crime and Soto's to C. Rodriguez and the admission of C. Rodriguez's trial testimony regarding the conversation violated ***Bruton v. United States***, 391 U.S. 123 (1968). ***See id***. The trial court disagreed, concluding Soto had not shown it had abused its discretion in denying his motions for severance. ***See*** Supplemental Trial Court Opinion, 6/16/25, at 9-10.

Soto's four-paragraph argument is both undeveloped and meritless. ***See*** Soto's Brief at 18-19. Soto fails to cite any law concerning severance.

*See id*. Moreover, Soto does not point to any law supporting his claim that the testimony of C. Rodriguez, a co-conspirator, regarding a conversation he had with Soto and J. Rodriguez *in which both co-defendants participated and discussed the details of the crime*, falls under *Bruton*. *See id*. We remind Soto it is not this Court's responsibility to develop his arguments for him. *See Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) ("[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities") (citations omitted).

Nevertheless, we agree with the Commonwealth that *Bruton* is not violated by the admission of an incriminating out-of-court statement admissible under a recognized hearsay exception, here, the statement of a co-conspirator during the course of, and in furtherance of, a conspiracy. *See Commonwealth v. Gribble*, 863 A.2d 455, 464-67 (Pa. 2004). As our Supreme Court noted, "the out-of-court declarations of one co-conspirator can be admitted against another co-conspirator provided that the declarations were made during the conspiracy and in furtherance of the common design." *Commonwealth v. Coccioletti*, 425 A.2d 387, 392 (Pa. 1981); *see also*

*Commonwealth v. Davis*, 268 A.3d 428 (Pa. Super. 2021) (unpublished memorandum at *8).[6]

Soto does not address the co-conspirator exception to the hearsay rule and thus does not dispute J. Rodriguez's statements were made in furtherance of the conspiracy. **See** Soto's Brief at 18-19. Even if he had, the argument does not prevail. The conversation included discussion of concealment of evidence and plans to flee the jurisdiction, **see** N.T., 2/12-21/24, at 456, 459-63, 465-67, 470-71, and thus falls within the co-conspirator exception. **See** **Davis**, **supra**, at *8 (holding that statements made by a non-testifying co-defendant during a telephone call with the victim and the defendant the day after the crime were admissible under the co-conspirator exception because they were motivated by a common purpose to avoid apprehension). Soto's first issue does not merit relief.

In his second issue, Soto contends the trial court erred in granting the Commonwealth's motion *in limine* to admit photos/video clips of Soto holding a gun. **See** Soto's Brief at 19-22.

We begin with our standard of review:

When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion. Instead, an abuse of discretion occurs only where the trial court

---

[6] **See** Pa.R.A.P. 126(b) (unpublished non-precedential memoranda decision of Superior Court filed after May 1, 2019, may be cited for persuasive value).

has reached a conclusion that overrides or misapplies the law, or when the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias or ill-will. Further, to the extent we are required to review the trial court's conclusions of law, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Cook*, 231 A.3d 913, 919 (Pa. Super. 2020) (internal quotation marks and citations omitted).

Soto claims photos/video clips of him holding a black shotgun which resembled the murder weapon were unfairly prejudicial. *See* Soto's Brief at 21-22. Soto claims, "The video creates an undue suggestion that [he] is guilty because, at some other time and place, he apparently possessed, however briefly, some firearm. The primary purpose of the video is to portray [Soto] as thuggish and to suggest a verdict based on an emotional reaction to that thuggishness." *Id*.

Our Supreme Court has stated:

The fact the accused had a weapon or implement suitable to the commission of the crime charged, such as a knife . . . is always a proper ingredient of the case for the prosecution. This [C]ourt has repeatedly held that the prosecution need not establish that a particular weapon was actually used in the commission of a crime in order for it to be admissible at trial. The only burden on the prosecution is to lay a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime. Moreover, the admission of such demonstrative evidence is a matter within the discretion of the trial judge and, absent an abuse of his discretion, his decision must stand.

*Commonwealth v. Lee*, 662 A.2d 645, 652 (Pa. 1995) (internal quotation marks and citations omitted).

- 10 -

The trial court held the photos admissible under longstanding Supreme Court precedent. *See* Supplemental Trial Court Opinion, 6/16/25, at 11. The trial court explained, moreover, the photos were cumulative of the testimony of both Commonwealth witnesses Kreitz and Medina that they had seen Soto in possession of a black shotgun before the crime. *See id*. at 11-12; *see also* N.T., 2/12-21/24, at 259-60, 290, 419-20, 624, 681, 687, 734, 737.

Soto does not dispute that the photographs/video clips were admissible; he argues only that their probative value was outweighed by their potential for unfair prejudice. *See* Soto's Brief at 21-22. We are not persuaded by Soto's bald allegation of prejudice, particularly, where, as here, other witnesses testified, without objection, they saw Soto in possession of a black shotgun in the weeks and days prior to the robbery. *See Commonwealth v. Ford*, 2019 WL 4598037, at \*5 (Pa. Super. Sep. 23, 2019) (rejecting appellant's bald claim the introduction of bullets found in his home into evidence was unduly prejudicial because it could lead to the inference that he possessed a firearm). Soto's second issue does not merit relief.

In his third issue, Soto avers the trial court erred in sustaining the Commonwealth's objection to a portion of Echevarria's testimony. *See* Soto's Brief at 22. The admissibility of evidence

> is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest

unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

***Commonwealth v. Johnson***, 42 A.3d 1017, 1027 (Pa. 2012) (internal quotation marks and citations omitted). The Pennsylvania Rules of Evidence provide "[a]ll relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402.

Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. In addition, evidence is only admissible where the probative value of the evidence outweighs its prejudicial impact.

***Commonwealth v. Smith***, 288 A.3d 126, 129 (Pa. Super. 2022) (citations omitted).

Soto argues the trial court erred in sustaining the Commonwealth's objection to Echevarria providing an interpretation of the meaning of the conversation between C. Rodriguez and Antonio. ***See*** Soto's Brief at 22. The trial court maintains its ruling was correct because as Echevarria was a lay witness, "her interpretation was not relevant." Supplemental Trial Court Opinion, 6/16/25, at 17.

Soto's argument on this issue, which consists of less than one page, is anemic. ***See id***. Soto fails to cite any law, fails to apply the facts to the law, and does not provide any substantive argument explaining why or how the trial court either abused its discretion or committed an error of law. He also does not show how the omission of Echevarria's interpretation of a phone call

- 12 -

she did not participate in prejudiced him  This Court will not act as counsel and will not develop arguments on behalf of an appellant.  **See Hardy**, 918 A.2d at 771.   When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we can dismiss the appeal entirely or find certain issues to be waived.  **See** Pa.R.A.P. 2101; **Hardy**, **supra**.   Therefore, we conclude Soto waived his third issue.[7]

In his fourth and final issue, Soto argues the evidence was insufficient to sustain his convictions for murder in the first degree, specifically intent to kill.  **See** Soto's Brief, at 23-25.  Pertinently:

> [w]e review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[]finder to find every element of the crime beyond a reasonable doubt.  Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact[]finder.

**Commonwealth v. Miller**, 172 A.3d 632, 640 (Pa. Super. 2017) (citations and quotation marks omitted).

---

[7] Even if we were to review the claim, we would not afford Soto relief.  We have reviewed Echevarria's testimony and fail to see how her interpretation of a conversation she did not participate in, which took place one to two days after the murders, and did not involve either co-defendant, was admissible or relevant to establishing a material fact, makes a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. The trial court did not abuse its discretion when it sustained the objection.

"An individual commits first-degree murder when he intentionally kills another human being; an intentional killing is defined as a willful, deliberate and premeditated killing." ***Commonwealth v. Williams***, 176 A.3d 298, 306 (Pa. Super. 2017) (internal quotation marks and citation omitted). "To sustain a conviction for first-degree murder, the Commonwealth must establish beyond a reasonable doubt that: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and the specific intent to kill." ***Commonwealth v. Cash***, 137 A.3d 1262, 1269 (Pa. 2016) (citation omitted). "[T]he jury, as a factfinder, may infer that the accused intended to kill a victim based on the accused's use of a deadly weapon on a vital part of the victim's body." ***Commonwealth v. Sanchez***, 36 A.3d 24, 37 (Pa. 2011) (citation omitted).

Soto argues the Commonwealth's evidence fails to establish that he acted with the specific intent to kill. ***See*** Soto's Brief at 23-25. Soto views the evidence in the light most favorable to himself, rather than the Commonwealth, the verdict winner, as required by legal precedent. ***See Commonwealth v. Emler***, 903 A.2d 1273, 1277 (Pa. Super. 2006) (noting that view the evidence in the light most favorable to the defendant, "wholly ignores our standard of review". Instead, Soto claims the evidence was only sufficient to sustain a conviction for voluntary manslaughter because he acted in imperfect self-defense. ***See id***. at 24-25.

The trial court found the evidence sufficient to sustain the convictions, explaining in its 1925(a) opinion:

When J. Rodruguez and Soto left 661 Gordon Street, Soto had a black shotgun and J. Rodriguez had a pistol with a switch on the back and they had a plan to rob Sudler and Green of marijuana. The plan included Kreitz pointing his gun at Sudler and Green and directing them to park the car. J. Rodriguez further stated that if Sudler were to start reaching for a weapon he was going to start shooting. Sudler called Kreitz at 11:31 pm and informed him he was [there]. Kreitz walked up to Sudler's car and opened the rear door and then observed J. Rodriguez and Soto approaching Sud[l]er's car. Rodriguez and Soto ran up to the car with masks on and J. Rodruguez pointed his gun at Sudler. After J. Rodriguez pointed his gun, gunshots erupted. J. Rodriguez stated that Sudler did not follow his commands, so J. Rodriguez shot him and then Soto started shooting and they ran.

Sudler was shot at close range, within [three] to [twelve] inches from the muzzle of the firearm to his clothing. During the autopsy [six] gunshot wounds were located. The first gunshot wound was to the chest. The second gunshot wound passed through the back of the chest and was recovered from the back of the neck. The third gunshot went into the left arm. The fourth gunshot was a through and through wound of the front surface of the left forearm. The fifth gunshot was in the back of Sudler's neck. ***The [sixth] wound was a shotgun wound and went into the back of the head and it penetrated the bone of the cranium.*** Multiple pellets were seen, and several were recovered. The manner of Sudler's death was homicide.

The cause of death for Green was perforations of the lungs, heart, spleen and left kidney due to gunshot wounds of chest and abdomen. Green suffered two gunshot wounds in addition to a shotgun wound. The gunshot wounds both penetrated the torso. The first one perforated the left lung, the heart, the second rib and led to bleeding around the heart and into the chest cavities. The second one went from the abdomen and perforated the spleen and left kidney. Both gunshot wounds perforated vital organs. The shotgun wound was located in the right deltoid region. N.T. at 954-955. Green's manner of death was homicide.

> As set forth above, a firearm is a deadly weapon, and the chest is a vital part of the body. Pennsylvania law makes no distinction between parts of the chest that are vital or non-vital. The Pennsylvania Supreme Court has held that "[t]he chest and abdomen house the human body's chief circulatory and digestive organs, as well as a network of vital arteries and veins which supply them and, thus, are vital areas of the body." [**Commonwealth v.**] **Briggs**, [12 A.3d 291, 307 (Pa. 2011)]. Based on this language, it is clear that the entire chest is a vital area of the body. Therefore, the jury could infer that Soto had the specific intent to kill Sudler and Green based on Soto's use of a shotgun to shoot Sudler and Green in the torso area.

Supplemental Trial Court Opinion, 6/16/25, at 14-16 (record citations omitted, emphasis added).

We agree with the trial court that this evidence was sufficient for the jury to find Soto acted with specific intent to kill. **See Commonwealth v. Baker**, 201 A.3d 791, 796 (Pa. Super. 2018) (evidence defendant sought to obtain a gun and then shot victim twice sufficient to sustain conviction for murder in first degree); **see also Williams**, 176 A.3d 298, 307-08 (Pa. Super. 2017) (evidence sufficient to sustain conviction for murder in first degree where defendant possessed deadly weapon and shot victim in chest despite his claim that he had not intentionally aimed for vital part of body). Moreover, we reject Soto's contention that when he planned a robbery, approached the victim's car wearing a mask and in possession of a shotgun, and pointed a shotgun at the victims before the shooting began shows in any way an imperfect self-defense. Soto's fourth issue does not merit relief.

As all of Soto's issues are in some cases waived and, in all cases, meritless, we affirm the judgment of sentence.

Judgment of sentence affirmed


Judgment Entered.



Benjamin D. Kohler, Esq.
Prothonotary


Date: 08/27/2025