J-A23035-22

2022 PA Super 223

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                        :           PENNSYLVANIA
                                          :
            v.                       :
                                          :
                                          :
DONALD SMITH, JR.              :
                                          :
           Appellant          :     No. 1158 MDA 2021

Appeal from the Judgment of Sentence Entered August 4, 2021
In the Court of Common Pleas of Lancaster County Civil Division at
No(s):  CI-21-05024

BEFORE:   BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:           **FILED: DECEMBER 29, 2022**

Donald Smith, Jr. appeals from the August 4, 2021 judgment of sentence ordering him to pay court costs after he was found guilty of indirect criminal contempt[1] of a Protection From Abuse ("PFA") order.  The trial court made a determination of guilt without further penalty pursuant to 42 Pa.C.S.A. § 9721(a)(2).  After careful review, we affirm.

The relevant facts and procedural history of this case, as gleaned from the certified record, are as follows:  On July 26, 2021, Khadijah Smith (hereinafter "victim") filed a ***pro se*** PFA petition against Appellant, her husband.  That same day, the trial court granted victim's petition and ordered a temporary PFA prohibiting Appellant from having any contact with the

---

[*] Former Justice specially assigned to the Superior Court.

[1] 23 Pa.C.S.A. § 6114.

victim. At 9:50 p.m. on July 26, 2021, Lieutenant Christopher McCormick of the Lancaster City Bureau of Police served Appellant with a copy of the temporary PFA and evicted Appellant from the parties' residence.

On July 27, 2021, between the hours of 10:45 a.m. and 3:10 p.m., Appellant sent several Facebook messages to victim's Facebook account. The following day, Appellant was charged with one count of indirect criminal contempt. On August 4, 2021, a hearing was held on the indirect criminal contempt charge, in conjunction with the final PFA hearing previously scheduled for the same date.

At said hearing, the victim testified that the parties had previously used Facebook Messenger to communicate and that Appellant used his Facebook account to contact her several times on July 27, 2021. Notes of testimony, 8/4/21 at 9-11. Appellant's counsel objected to the statements, not the content of the messages themselves, as protected communications between spouses. *Id.* at 12. The trial court overruled Appellant's objection and the messages were admitted into the record. *Id.* at 14, 17. Appellant also testified on his own behalf at the hearing and acknowledged that he had been given a copy of the temporary PFA order by Lieutenant McCormick, but that he never read it prior to sending the messages to the victim. *Id.* at 26-29.

Following the hearing, the trial court found Appellant guilty of one count of indirect criminal contempt and sentenced him to pay court costs on August 4, 2021. This timely appeal followed on September 2, 2021.[2]

Appellant raises the following issues for our review:

1. Did the [trial court] abuse its discretion by admitting [Appellant's Facebook messages sent to his wife] despite [Appellant's] attempt to exercise his privilege regarding confidential communications between spouses, codified at 42 Pa.C.S.[A.] § 5914?

2. Was the evidence introduced by the Commonwealth at trial sufficient to prove that [Appellant] was guilty beyond a reasonable doubt of indirect criminal attempt?

Appellant's brief at 5.

Appellant first argues that the trial court abused its discretion in allowing the Commonwealth to introduce evidence that he contacted the victim via Facebook Messager because they constituted confidential communications between spouses, pursuant to 42 Pa.C.S.A. § 5914. Appellant's brief at 11-14. We disagree.

"[T]he admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Fransen**, 42 A.3d 1100, 1106 (Pa.Super. 2012) (citation omitted), **appeal denied**, 76 A.3d 538 (Pa. 2013).

---

[2] Appellant and the trial court have complied with Pa.R.A.P. 1925.

> The threshold inquiry with admission of evidence is whether the evidence is relevant. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. In addition, evidence is only admissible where the probative value of the evidence outweighs its prejudicial impact.

*Commonwealth v. Antidormi*, 84 A.3d 736, 750 (Pa.Super. 2014) (citations and internal quotation marks omitted), *appeal denied*, 95 A.3d 275 (Pa. 2014); *see also* Pa.R.E. 401(a), (b).

Here, a review of the certified record supports the trial court's conclusion that the evidence that Appellant contacted the victim via Facebook Messager is not subject to privilege under Section 5914 nor Section 5924.

Section 5914 governs confidential communications between spouses and provides that "in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial." 42 Pa.C.S.A. § 5914. In *Commonwealth v. McBurrows*, 779 A.2d 509 (Pa.Super. 2001), *appeal denied*, 815 A.2d 632 (Pa. 2002), *cert. denied*, 540 U.S. 829 (2003), a panel of this Court explained Section 5914 as follows:

> This privilege prevents a husband or wife from testifying against their spouse as to any communications which were made during the marital relationship. The privilege remains in effect through death or divorce. The confidential communication cannot be divulged without the consent of the other spouse. The public policy sought to be enhanced by this privilege is the preservation of marital harmony

- 4 -

and the resultant benefits to society from that harmony. Communications between spouses are presumed to be confidential, and the party opposing application of the rule disqualifying such testimony bears the burden of overcoming this presumption. In order for a confidential communication between spouses to be protected, knowledge must be gained through the marital relationship and in the confidence which that relationship inspires. In order to be protected under § 5914, it is essential that the communication be made in confidence and with the intention it not be divulged.

*Id.* at 514 (internal quotation marks and citations omitted). Thus, "while communications between spouses are presumed to be confidential under section 5914, it has long been recognized that whether a particular communication is privileged depends upon its nature and character and the circumstances under which it was said." ***Commonwealth v. Hunter***, 60 A.3d 156, 159–160 (Pa.Super. 2013) (citation and footnote omitted).

A court may hold a defendant in indirect criminal contempt and punish him or her in accordance with the law where the police have filed charges of indirect criminal contempt against the defendant for violating a PFA order issued pursuant to the domestic relations code. 23 Pa.C.S.A. § 6114(a). Section 5924 is the corollary to Section 5914 in civil matters where a spouses are called to testify as a witnesses against each other in indirect criminal contempt matters. This section provides that "[i]a civil matter neither husband nor wife shall be competent or permitted to testify against each other[,] **[except] … in an action or proceeding … [a]rising under 23 Pa.**

**C.S. Ch.61 (relating to protection from abuse)**." 42 Pa.C.S.A. § 5924(a), (b)(4) (emphasis added).

Instantly, it is quite clear that the Legislature did not intend for the confidential communications privilege to apply where a PFA order is in effect. Under Section 5924(b)(4), the presumption of a spousal confidential communications privilege is inapplicable because the underlying indirect criminal contempt charge arose out of a protection from abuse action. To allow otherwise would permit a defendant-spouse to engage in whatever contact he desires with his plaintiff-spouse irrespective of the protections afforded by the PFA.

In reaching this decision, we find our Supreme Court's holding in **Commonwealth v. Spetzer**, 813 A.2d 707 (Pa. 2002), insightful. In **Spetzer**, our Supreme Court held that communications tending to create or promote marital disharmony are not protected under the confidential communications privilege. **Id.** at 719 (stating, "there are instances where the circumstances surrounding marital communications indicate that the communications are intended to create or further disharmony in the marital relationship; in those instances, the privilege yields."). The **Spetzer** Court reasoned:

> It is safe to say that the communications appellee made to his wife here-concerning appellee's past (e.g., rape), continuing (e.g., witness intimidation), and future-intended (e.g., attempted sexual assaults) crimes against his wife and her minor children-are not the sensitive, marital harmony-inspiring

communications contemplated by the common law authorities, or the Pennsylvania General Assembly, in erecting this privilege. To the contrary, these communications were intended to further marital disharmony.

*Id.* at 720–721.

Similarly, in the instant matter, we agree with the trial court that although Appellant's actions do not rise to the level of those committed in *Spetzer*, permitting him to invoke spousal communications privilege in a situation involving a PFA where the act of sending the messages to the victim, regardless of their content, fosters disharmony in the marriage and constitutes an element of the crime of indirect criminal contempt, is both abhorrent and contrary to the intent of the privilege. *See* trial court opinion, 11/1/21 at 7. Accordingly, Appellant's first claim of trial court error must fail.

Appellant next argues that there was insufficient evidence to sustain his conviction for indirect criminal contempt because the Commonwealth failed to prove that he had "clear notice of the conduct prohibited by the [PFA] order" and that he acted with "wrongful intent." Appellant's brief at 30-33.

Our standard of review in evaluating a challenge to the sufficiency of the evidence is as follows:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-

finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Thomas***, 988 A.2d 669, 670 (Pa.Super. 2009) (citations omitted), ***appeal denied***, 4 A.3d 1054 (Pa. 2010).

A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court. Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order.

. . . .

To establish indirect criminal contempt, it must be shown that 1) the order was sufficiently clear to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act must have been one prohibited by the order; and 4) the intent of the contemnor in committing the act must have been wrongful.

***Commonwealth v. Padilla***, 885 A.2d 994, 996-997 (Pa.Super. 2005) (citations and internal quotation marks omitted), ***appeal denied***, 897 A.2d 454 (Pa. 2006).

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that there was sufficient evidence to sustain Appellant's conviction for indirect criminal contempt of the temporary PFA order. Here, the order at issue clearly prohibited Appellant "from having **ANY CONTACT** with [victim], or any other person protected under this order either directly or indirectly, at any location, including but not limited to any

contact at [victim's] or other protected party's school, business, or place of employment" . . . "by telephone or by any other means…." Temporary PFA order, 7/26/21 at §§ 3-4.

As the trial court comprehensively noted in its opinion,

> There is no doubt that [Appellant] received notice of the [temporary PFA (hereinafter, "TPFA")], having been personally served with the TPFA on July 26, 2021, at 9:50pm, by Lieutenant Christopher McCormick at 557 S. Christian St., Lancaster, PA 17602. Additionally, [Appellant] admitted to receiving the TPFA and riding away with it in his backpack on July 26, 2021. . . . [Appellant] testified that he was present at the residence in the presence of the Victim and was told to leave the premises by the police officer. [Appellant] admitted that he did not read the TPFA Order in the twelve (12) hours between the time he was served with the TPFA at 9:50pm on July 26, 2021, and he began sending the text messages to [victim] at 10:45am on July 27, 2021. [Pa.R.C.P. 1930.4(a)(1)] regarding service of original process in domestic relations matter indicates *inter alia* that service may be made by the sheriff or a competent adult by handing a copy to the defendant. That rule does not include an additional provision that an officer review all the provisions in an order with a defendant. It was incumbent upon [Appellant] in this case to review the legal document served upon him on July 26, 2021. It is no defense for [Appellant] to state that he failed to read an order of court during the twelve (12) hours after being served before violating that order.
>
> . . . .
>
> After being served with a TPFA at 9:50pm, [Appellant] rode to his sister's home, possibly slept, woke up the next day, and then volitionally acted by choosing to contact [victim] via Facebook text messages rather than reading the court order that, *inter alia*, prohibited him from remaining in his former marital

residence the prior night. [Appellant] deliberately chose to send messages to [victim] the day after being served with a TPFA that prohibited contact. He had time to contemplate his actions. Given the temporal proximity to his removal from the marital home the prior evening, and the passage of time in which he was in possession of the court order, the court does not doubt that [Appellant] either read the TPFA and chose to violate its prohibitions anyway, or chose not to read it, despite having ample time to do so. Either way, sending the messages to [victim] constituted a volitional act on the part of [Appellant].

The actions of [Appellant] demonstrated his wrongful intent. . . . The Victim testified that [Appellant] regularly communicated with [her] through messages on Facebook over a nine (9) year period. Therefore, there was a substantial certainty that his act of sending text messages to [victim] via Facebook would place him in contact with [her] in violation of the applicable TPFA.

Trial court opinion, 11/1/21 at 8-10.

Based on the foregoing, we agree that the Commonwealth presented ample evidence to support Appellant's conviction for indirect criminal contempt.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/29/2022

- 10 -