J-S22018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| STEPHANIE MARIE GARCIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM JAMES FATHREE | : | |
| | : | |
| Appellant | : | No. 1395 MDA 2024 |

Appeal from the Judgment of Sentence Entered September 20, 2024
In the Court of Common Pleas of Lebanon County, Civil Division,
at No(s): 2023-4-0242

BEFORE:   LAZARUS, P.J., BOWES, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                              **FILED AUGUST 22, 2025**

William James Fathree appeals from the judgment of sentence imposed upon his conviction of indirect criminal contempt ("ICC") of a protection from abuse ("PFA") order previously obtained by his former romantic partner, Stephanie Marie Garcia.  We affirm.

The trial court offered the following factual background:

[Appellant] and [Ms.] Garcia are the parents of three children. The parties are involved in contentious custody litigation regarding those children.  In addition, a dispute regarding child support exists.  All of the parties' disputes are complicated because [Appellant] resides in Florida.

On August 8, 2023,  [Ms.] Garcia filed a petition for relief under the [PFA] Act.  [She] alleged that on August 7, 2023, [Appellant] followed her and sent a note that said: "You talk to another nigga, I will kill you, love you."  The PFA petition alleged a past history of violence that included choking, punching[,] and threatening

_____

[*] Former Justice specially assigned to the Superior Court.

behavior with a knife. The PFA petition also alleged that [Appellant] physically abused a child who was then [four] years of age.

A hearing was scheduled for August 18, 2023, [Appellant] failed to appear. As a result, the PFA complaint filed by [Ms.] Garcia was granted and the temporary order was made final for a period of three years.

Trial Court Opinion, 10/23/24, at 1-2 (cleaned up).

The final PFA order was served on Appellant on August 25, 2023. **See** Final PFA Order 8/18/23. Pursuant to the order, Appellant was not permitted to have any contact with Ms. Garcia "by telephone or any other means, including through third persons." **Id**. Thereafter, on August 12, 2024, Ms. Garcia filed against Appellant alleging that he violated the terms of the PFA order by sending a text message that stated: "Can we talk? I know I fucked up and I want to make things right. I want to be in my kids [*sic*] lives. I miss them. I am sorry for what I have done. I am moving back to Pennsylvania next week." Trial Court Opinion, 10/23/24, at 2.

At the ensuing hearing held on September 20, 2024, both Ms. Garcia and Appellant testified.[1] Ms. Garcia indicated that, despite not recognizing the phone number from which the message originated, she was nevertheless able to identify Appellant as the sender, asserting that "he is the only person that would send a message like that." **See** N.T., 9/20/24, at 4. In detail, Ms.

---

[1] The Lebanon County Office of the District Attorney prosecuted the ICC charge at the hearing.

Garcia explained that she could identify Appellant based on the message's context and her personal circumstances, *i.e.*, given that she has no children with anyone else, has no current or previous paramours that live outside of the state except for Appellant, and maintains no other problematic relationship that would give rise to such a message. *Id*. at 5-6.

When questioned by opposing counsel regarding her ability to ascertain the sender of the text message with reasonably certainty, Ms. Garcia reiterated that, although she did not recognize the number, she does not communicate with anyone else, have any friends, or know anyone in Florida besides Appellant.[2] *Id*. at 10. Additionally, Ms. Garcia alleged that Appellant changed his phone number often and used multiple Facebook accounts in order to harass her. *Id*.

In contrast to Ms. Garcia's statements, Appellant expressly denied sending the message, testifying that, although the message was sent at a time when he had the ability to send it, he did not. *Id.* at 12. Appellant further averred that he neither desired to resume a relationship with Ms. Garcia nor did he have any intention of relocating to Pennsylvania. *Id.* at 12. Appellant indicated that the phone number associated with the message did

---

[2] The text message purported to come from area code 305. *See* N.T., 9/20/24, at 10. We take judicial notice of the fact that 305 is the code associated with southern Florida, including the Miami area.

- 3 -

not match his current number but conceded that his device supported the use of a text-free application, though he denied ever having used one.[3]  *Id*. at 18.

Following the hearing, the trial court concluded that, based upon the evidence presented, Appellant violated the PFA order by sending the text message to Ms. Garcia from a new phone or by causing someone else to send the message on his behalf.  *See* Trial Court Opinion, 10/23/24, at 6.  The trial court did not impose incarceration or probation but instead ordered Appellant to pay $250 toward the cost of reunification counseling to help facilitate the re-establishment of a relationship with his children.  *Id*. at 9.

This timely appeal followed.  Both Appellant and the trial court complied with the requirements of Pa.R.A.P. 1925.  Appellant presents the following issue for our review:  "Did the [trial c]ourt commit an error of law and/or abuse of discretion by finding that the Appellant violated a PFA after hearing testimony that [Ms. Garcia] did not know who sent the email/text to her?"  Appellant's brief at 8.

Where a defendant is found to have violated a PFA order, the PFA Act permits the court to "hold the defendant in indirect criminal contempt and punish the defendant in accordance with the law." *See* 23 Pa.C.S. § 6114(a). To establish ICC, the following must be proven: "1) the order was sufficiently

---

[3] A text-free application provides the user with a phone number that is available for sending and receiving texts from various types of electronic devices.

clear to the contemnor as to leave no doubt of the conduct prohibited; 2) the

contemnor had notice of the order; 3) the act must have been one prohibited

by the order; and 4) the intent of the contemnor in committing the act must

have been wrongful." ***Commonwealth v. Smith***, 288 A.3d 126, 131

(Pa.Super. 2022) (cleaned up).

Ultimately, Appellant's argument challenges the sufficiency of the

evidence presented to support his ICC conviction. Our standard of review for

is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence
> is whether viewing all evidence admitted at trial in the light most
> favorable to the verdict winner, there is sufficient evidence to
> enable the fact-finder to find every element of the crime beyond
> a reasonable doubt. In applying the above test, we may not weigh
> the evidence and substitute our judgment for the fact-finder. In
> addition, we note that the facts and circumstances established by
> the Commonwealth need not preclude every possibility of
> innocence. Any doubts regarding a defendant's guilt may be
> resolved by the fact-finder unless the evidence is so weak and
> inconclusive that as a matter of law no probability of fact may be
> drawn from the combined circumstances. The Commonwealth
> may sustain its burden of proving every element of the crime
> beyond a reasonable doubt by means of wholly circumstantial
> evidence.

***Commonwealth v. Boyd***, 320 A.3d 151, 155 (Pa.Super. 2024) (cleaned up).

Further, "[i]n addition to proving the statutory elements of the crimes

charged beyond a reasonable doubt, the Commonwealth must also establish

the identity of the defendant as the perpetrator of the crimes."

***Commonwealth v. Brooks***, 7 A.3d 852, 857 (Pa.Super. 2010). As with all

other elements of the crime, "any indefiniteness and uncertainty in the

identification testimony goes to its weight. Direct evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence." ***Commonwealth v. Smyser***, 195 A.3d 912, 915 (Pa.Super. 2018) (cleaned up).

Appellant's argument is not based on any of the statutory elements of his ICC conviction, but rather on the sufficiency of the evidence presented to establish that he was the perpetrator of the crime. Specifically, Appellant asserts that the trial court's conclusion that he authored the message lacked sufficient evidentiary support, given Ms. Garcia's testimony that she had not previously associated the source of the message with Appellant. ***See*** Appellant's brief at 7.

Although Appellant denied sending the text message, the trial court did not find his testimony credible and concluded that Ms. Garcia's testimony provided sufficient circumstantial evidence to prove that he authored the message. ***See*** Trial Court Opinion 10/23/24, at 6. It was for the trial court to evaluate the credibility and import of the competing evidence, and we may not re-weigh it and substitute our judgment for that of the fact-finder. ***See Boyd***, 320 A.3d at 155.

Appellant's challenge amounts to a complaint that there was no direct evidence that he was the person who sent the text in question to Ms. Garcia. However, as noted above, direct evidence is not required to establish any element of a crime. ***Id***. Upon review of the trial record in the light most

favorable to Ms. Garcia, we discern ample circumstantial evidence to demonstrate that Appellant either sent the text message himself or caused someone else to send it on his behalf.

Specifically, Ms. Garcia testified that the message referenced her children, whom she shares exclusively with Appellant. *See* N.T., 9/20/24, at 5. Moreover, the text message expressed the sender's desire to be in those children's lives. *Id*. Ms. Garcia's testimony further undermined the possibility that someone else would have had the motive to send the message, as she explained that she had no problems with anyone else in her life, had no other paramours who would have possessed any reason to send her a threatening message, and knew no one who would be returning to Pennsylvania other than Appellant. *Id*. at 5-6.

Although the evidence did not preclude all possibility that someone other than Appellant sent the message in question, such was not required. *See*, *e.g.*, *Smyser*, 195 A.3d at 916-17 (holding evidence of identity as the person who used a computer to view child pornography was sufficient despite testimony that other members of the household also had access to the device). Ms. Garcia's testimony, credited by the trial court, was enough to allow it to conclude beyond a reasonable doubt that Appellant was the individual who initiated the text communication, thereby violating the clear prohibitions of the PFA order. *Accord Commonwealth v. Talley*, 236 A.3d 42, 60 (Pa.Super. 2020) (ruling that, although the victim did not recognize

the phone number from which she received threatening messages, the defendant was properly identified to be the sender where, *inter alia*, she had never received threatening messages prior to ending her relationship with the defendant and the text messages referenced specific sexual acts that were only known to them).  Therefore, Appellant's sufficiency challenge to his conviction for ICC must fail.

Judgment of sentence affirmed.

P.J.E. Stevens joins this Memorandum.

P.J. Lazarus concurs in the result.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 08/22/2025