J-A28023-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| GINA BAEZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CRISTIAN TORRES | : | |
| | : | |
| Appellant | : | No. 320 MDA 2025 |

Appeal from the Judgment of Sentence Entered February 14, 2025
In the Court of Common Pleas of Lebanon County Civil Division at No(s):
2024-AB-0030

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED: MARCH 19, 2026**

Cristian Torres appeals from the judgment of sentence entered following his conviction for indirect criminal contempt of a Protection from Abuse order ("PFA Order").[1] Torres argues the Commonwealth failed to present evidence he willfully violated the PFA and that the court erred when it considered his violations of a prior PFA when imposing sentence. We affirm.

The trial court summarized the factual and procedural history as follows:

> On January 25, 2024, Gina Baez ("Plaintiff") initiated a [PFA] action against [Torres]. A temporary PFA [o]rder was entered on January 26, 2024. [Torres] was charged with violating the temporary Order on February 7, 2024. On February 16, 2024, a hearing was held on the alleged violation and for the final PFA Order. The Court found [Torres] in violation and entered a final Order. [Torres] was charged with violating the final PFA Order on March 3, 2024, and again on March 10, 2024. At a hearing on March 15, 2024, [Torres] admitted to both violations. On July 15,

_____

[1] 23 Pa.C.S.A. § 6114(a).

2024, Plaintiff filed a Petition to Withdraw the PFA Order. On July 26, 2024, Plaintiff's Petition was granted and the PFA Order was vacated.

On November 14, 2024, Plaintiff initiated another PFA action against [Torres]. A final Order (the "PFA Order") was entered on November 22, 2024. The PFA Order provided that [Torres] was not to abuse harass, stalk, threaten, or attempt or threaten to use physical force against Plaintiff. It further provided that [Torres] was not to contact Plaintiff, either directly or indirectly, by telephone or other means, including through third persons. One exception to this restriction was granted authorizing [Torres] to contact Plaintiff via text message regarding their minor child.

On January 25, 2025, [Torres] was charged with an alleged violation of the PFA Order. A hearing on the alleged violation was conducted on February 14, 2025. Plaintiff and Plaintiff's mother testified regarding the events of January 25, 2025. [Torres] testified on his own behalf.

Trial Ct. Op, filed April 24, 2025, at 1-2 (footnote omitted).

At the hearing, Plaintiff testified that she lived with her mother Myriam Hernandez and that Torres is the father of Plaintiff's child. N.T., 2/14/2025, at 3-4. She testified Torres sent her text messages threatening her and accusing her of "being with another guy," and that she received some of the messages "during the period around January 25[, 2025.]" *Id.* at 5-6. In addition, Plaintiff testified she saw Torres on January 25, 2025, from the porch of her house. *Id.* at 6. She stated he "just walks by, just does weird stuff." *Id.* at 7. When he walked past the house, he did not say anything or look at her. *Id.*

On cross-examination, Plaintiff testified Torres provided her with diapers and wipes for their child and that the threatening text messages were not from his phone number, but were from a TextNow phone number, which anyone can create. *Id.* at 9-10. On re-direct examination, Plaintiff stated she knew

the messages were from Torres because of "[h]ow he types and what he says, it just goes with how he talks," he had made similar threats before, and no one else had ever sent her threatening messages. *Id.* at 11-12.

Plaintiff's mother, Hernandez, testified that Plaintiff lived with her. *Id.* at 13. She stated that on January 25, 2025, Torres was in front of her house, in his car, "screaming, yelling, threatening." *Id.* at 14. She testified Plaintiff was not home, but Plaintiff's car was there. *Id.* She stated that Torres threatened that "if she's with another guy or if he catches her with a guy in the car, he's going to kill the guy." *Id.* at 15.

Torres testified that he did not remember the morning of January 25, 2025, but "around noon [he] had business to attend to," and "it was a normal day to [him]," where he worked. *Id.* at 21. He stated that he worked so he could provide financially for his child, including diapers, wipes, and lotion. *Id.* at 22. Torres testified he did not text Plaintiff from a TextNow number. *Id.* at 23. He testified that sometime during the week of January 25, 2025, he requested that the police conduct a welfare check on Plaintiff and his child because he alleged no one could locate Plaintiff. *Id.* at 24-25. Torres stated he did not recall if he was at Plaintiff's house on January 25, 2025, and testified he did not make the alleged threats. *Id.* at 26.

The trial court found Torres violated the PFA Order. The court sentenced Torres to pay a fine of $400 and to undergo a five-month period of incarceration in the Lebanon County Correctional Facility. It also extended the PFA Order for the maximum term of three years. Torres filed a timely appeal.

He raises the following issues:

> 1. Did the Commonwealth fail to meet its burden of proof that [Torres] violated the [PFA] Order?
>
> 2. Did the trial court err, abuse its discretion, or commit an error in law in finding [Torres] was in violation of his order for Protection and Abuse?
>
> 3. Did the trial court err, abuse its discretion, or commit an error of law when considering [Torres's] previous violations when the original petition was dismissed and Plaintiff filed a new petition of abuse?

Torres's Br. at 2.

We will address Torres's first two issues together. Torres first claims the Commonwealth failed to establish that he violated the PFA Order. He admits the order was definite, clear, and specific and that he had notice of it. He further admits that the Commonwealth established a volitional act. He claims, however, that he did not act with wrongful intent. He points out that Plaintiff testified that Torres did not talk to her, threaten her, or look at her on January 25, 2025. He argues that however he "may or may not have acted out to [Plaintiff's] mother," Plaintiff's mother was not a protected party on the PFA. Therefore, he argues, even if he did "become verbally combative or harassing in violation of the PFA Act," he did so to a non-protected party. Torres's Br. at 8. He therefore claims the Commonwealth could not establish he acted with wrongful intent to violate the PFA.

To determine whether the evidence is sufficient to support a conviction "we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the

Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt." **Commonwealth v. Smith**, 288 A.3d 126, 131 (Pa.Super. 2022) (citation omitted). This Court "may not re-weigh the evidence and substitute our judgment for that of the fact-finder." **Id.** (citation omitted). "Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances." **Id.** (citation omitted).

PFA orders are enforced by prosecution for indirect criminal contempt. **See** 23 Pa.C.S.A. § 6114; **Commonwealth v. Bartic**, 303 A.3d 124, 131 (Pa.Super. 2023). To prove indirect criminal contempt, the Commonwealth must present evidence sufficient to establish that "the court's order was definite, clear, specific, and leaving no doubt in the person to whom it was addressed of the conduct prohibited; the contemnor had notice of the order; the act constituting the violation was volitional; and the contemnor acted with wrongful intent." **Commonwealth v. McMullen**, 961 A.2d 842, 849 (Pa. 2008). Whether the defendant acted with wrongful intent should be determined using common sense and considering the context. **Commonwealth v. Reese**, 156 A.3d 1250, 1258 (Pa.Super. 2017).

Here, Torres claims the Commonwealth failed to prove he acted with wrongful intent. The trial court concluded that Plaintiff and her mother "testified credibly regarding the events of January 25, 2025." Trial Ct. Op. at 6. It found Plaintiff's testimony established that she received messages from an unknown number and that the messages "in both style and content,

matched messages Plaintiff ha[d] previously received from [Torres.]" *Id.* The court pointed out that Torres also "appeared at Plaintiff's residence and made threatening statements to Plaintiff's mother," and that the statements "corresponded to the threats conveyed by the unknown number to Plaintiff." *Id.* The court concluded that "it was reasonable to infer that [Torres] was in fact the author of the messages to Plaintiff." *Id.* It further concluded that "there was sufficient evidence to sustain a finding that [Torres] willfully violated the clear terms of the PFA Order prohibiting him from threatening or communicating with Plaintiff about anything other than their minor child." *Id.*

We agree. The Commonwealth's evidence that Torres sent threatening text messages to Plaintiff, sat in his car outside her home and made threats, and walked past her home while she was outside was sufficient to establish wrongful intent.

In his second issue, Torres argues the court erred in considering the violations of the first PFA order after it had been dismissed. He claims such violations were similar to prior arrests, which a court may not consider when imposing sentence. *See* Torres' Br. at 9-10 (citing *Commonwealth v. Berry*, 323 A.3d 641, 649 (Pa. 2024)). He maintains that the current violation was of a new PFA Order and "therefore any findings of indirect criminal contempt should be only considered for the current PFA in effect." *Id.* at 10.

In *Berry*, the Pennsylvania Supreme Court concluded that a sentencing court may not consider a defendant's "record of prior arrests, which did not result either in juvenile adjudications or adult convictions, as a factor at

sentencing." 323 A.3d at 643. It reasoned that "arrests without conviction 'happen[] to the innocent as well as the guilty'" and therefore "they offer nothing probative about a defendant's background at sentencing." *Id.* (footnote citation omitted) (alteration in original). Torres's violations of a previous PFA order were not like an arrest without a finding of guilt. Torres's prior violations resulted in findings that he was in violation, rendered after hearings. The court could properly consider them when imposing a sentence for contempt of the PFA Order. Accordingly, we affirm.

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/19/2026