J-A04034-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MORAN ZELAYA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAUL GONZALEZ | : | |
| | : | |
| Appellant | : | No. 1631 MDA 2024 |

Appeal from the Judgment of Sentence Entered October 4, 2024
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  2024-AB-0242

BEFORE:  PANELLA, P.J.E., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                **FILED: APRIL 15, 2026**

Raul Gonzalez ("Gonzalez") appeals from the judgment of sentence imposed following his conviction for indirect criminal contempt[1] ("ICC") of a Protection from Abuse[2] ("PFA") order.  We affirm.

On September 3, 2024, the trial court entered a temporary PFA order against Gonzalez, in favor of his estranged wife, Moran Zelaya ("Zelaya"), pending a final PFA hearing.  The temporary PFA order directed Gonzalez not to "abuse, harass, stalk, threaten, or attempt to threaten to use physical force against [Zelaya] in any place where [she] might be found" and prohibited him from "ANY CONTACT with [Zelaya], or any other person protected under this

---

[1] **See** 23 Pa.C.S.A. § 6114(a).

[2] **See** 23 Pa.C.S.A. §§ 6101-6122.

order either directly or indirectly, at any location . . . ." Order, 9/3/24, at 1-2.

After the entry of the temporary PFA order on September 3, 2024, Zelaya was "scared of living in [her] apartment," and thus temporarily moved in with her sister and brother-in-law. N.T., 10/4/24, at 5-6. Her sister's apartment shared a wall with Gonzalez's father's apartment; however, Zelaya had not seen Gonzalez in the area and did not know where he was living. **See id**. at 6-7.

On September 25, 2024, when Zelaya, her family members and a friend exited the apartment, "suddenly [Gonzalez] came out of nowhere" and began recording Zelaya on his phone. **Id**. at 8. Gonzalez followed Zelaya into the parking lot as she walked to her vehicle "with his phone out the whole time." **Id**. at 9. Gonzalez then entered his own vehicle and followed Zelaya's vehicle down the street, continuing to record her with his phone. When Zelaya's vehicle reached a stop sign and turned, Gonzalez stopped filming and drove in the opposite direction. Zelaya reported Gonzalez's actions to police, who then filed a criminal complaint against Gonzalez for allegedly violating the temporary PFA order. We note the trial court entered the final PFA order on September 27, 2024.

On October 4, 2024, the trial court conducted a violation hearing. Zelaya and her brother-in-law testified to the incident as summarized above.

Gonzalez testified in his own defense and admitted that he followed and filmed Zelaya with his phone, explaining:

- 2 -

. . . On that day I was going to an appointment with my attorneys and that person [*sic*] even though she knows she took a PFA out on me, she's always around there every morning, every afternoon, every night.  So I left the apartment and I find out . . . that they're there.  And I started to take some pictures of her brother-in-law who was in the car.

No, I did that because I didn't really know what a PFA was.  Well, because when I've called the police and called the Sheriff and I said well, can I take pictures?  They said well, yeah, from a distance if you need evidence.  Because I called them she's always around me.  I mean she's always where I am.

* * * *

. . . I had an appointment with my lawyer and it's one way, the alley.  And so there's only one way to get out, so I had to and I was late so I had to wait for them to leave and then go out the same way.  It's always the same.  I always have to wait for them, for her when she's around.  I have to wait for her to leave.

N.T., 10/4/24, at 23, 26.  Gonzalez denied getting "up close" and testified that he stayed "20 feet, 30 feet away" from Zelaya while he filmed.  ***Id***. at 25.

At the conclusion of the hearing, the trial court found Gonzalez guilty of ICC and imposed a sentence of six months' probation.

Gonzalez did not file any post-sentence motions.  He filed a notice of appeal.  The trial court ordered Gonzalez to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal within twenty-one days.  After this deadline, Gonzalez filed a motion for extension of time to file a Rule 1925(b) statement, stating that the transcript was unavailable.  The trial court granted an extension, and Gonzalez filed a Rule 1925(b) statement after the purported extended deadline.

- 3 -

Gonzalez presents the following issues for our review:

1. [Were] Gonzalez's notice of appeal and subsequent 1925(b) concise statement timely filed?

2. Was the evidence insufficient to prove that . . . Gonzalez intentionally and volitionally violated the protection order where . . . Gonzalez did not have proper notice of prohibited acts of the protection order; the [protection] order was not sufficiently clear that: (1) the act of recording was a prohibited act under the protection order; and (2) . . . Gonzalez was prohibited from making records "to protect himself in the future?"

3. Was the verdict against the weight of the evidence where [Zelaya] lied about her place of residence and [Gonzalez's] acts were in no way a volitional or intentional means to violate the protection order?

Gonzalez' Brief at 5 (unnecessary capitalization omitted).

In Gonzalez's first issue, he avers that both his notice of appeal and Rule 1925(b) statement were timely. In its opinion, the trial court suggested that both were untimely.

We first note that "this Court has no jurisdiction over an untimely appeal." *Commonwealth v. Williams*, 255 A.3d 565, 570 (Pa. Super. 2021) (citation omitted). The trial court entered its order on October 4, 2024; thus, the deadline to file the notice of appeal was Sunday, November 3, 2024. *See* Pa.R.A.P. 903(a) (providing that an appellant must file a notice of appeal "within [thirty] days after the entry of the order from which the appeal is taken"). Gonzalez filed the notice of appeal the next day on Monday, November 4, 2024. *See* 1 Pa.C.S.A. § 1908 (providing "[w]henever the last day of any such period shall fall on Saturday or Sunday . . . such day shall be

omitted from the computation"). We therefore conclude Gonzalez filed a timely notice of appeal.

With respect to the Rule 1925(b) statement, we note the following. Pennsylvania Rule of Appellate Procedure 1925(b)(2)(ii) provides: "If a party has ordered but not received a transcript necessary to develop the Statement, that party may request an extension of the deadline to file the Statement until 21 days following the date of entry on the docket of the transcript in accordance with Pa.R.A.P. 1922(b)." Pa.R.A.P. 1925(b)(2)(ii). An appellant seeking to extend time to file a Rule 1925(b) concise statement must do so in writing, with good cause shown, within the twenty-one day time limit provided for in Rule 1925(b)(2). *See Commonwealth v. Gravely*, 970 A.2d 1137, 1145 (Pa. 2009).

Generally, the failure to file a court-ordered Rule 1925(b) statement will result in waiver of all issues on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii). However, we deem a criminal defendant's attorney's failure to file a timely Rule 1925(b) statement, which would result in the waiver of all issues on appeal, to be *per se* ineffectiveness. *See Commonwealth v. Burton*, 973 A.2d 428, 432-33 (Pa. Super. 2009). In such instances, an appellant is entitled to prompt relief. *See id*. at 433. Rather than remand the matter and further delay appellate review, "this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal." *Id*.

On November 14, 2024, the trial court ordered Gonzalez to file a Rule 1925(b) statement within twenty-one days, or by Thursday, December 5, 2024. Gonzalez did not file a motion to extend time until December 9, 2024, four days after the deadline. The trial court purported to grant it on December 13, 2024. We determine, however, that because Gonzalez failed to file a timely motion for extension of time, the trial court had no authority to grant it, and Gonzalez's subsequently filed Rule 1925(b) statement was untimely.[3] *See Gravely*, 970 A.2d at 1145.

Rather than determining that Gonzalez has waived all issues for appeal, however, we deem that his attorney's untimely filing is *per se* ineffective assistance of counsel, for which Gonzalez is entitled to prompt relief. *See Burton*, 973 A.2d at 433. Here, the trial court addressed Gonzalez's issues

---

[3] Both the trial court and Gonzalez focus their discussion on the timeliness of the ultimately-filed Rule 1925(b) statement, specifically with respect to the date the court clerk entered the transcript on the docket. *See* Trial Court Opinion, 1/28/25, at 4 (reasoning that Gonzalez filed the Rule 1925(b) statement on January 22, 2025, more than twenty-one days after the filing of the transcript on December 19, 2024); *see also* Gonzalez's Brief at 12 (arguing that Gonzalez requested electronic delivery of a digital copy of the transcript, but "unbeknownst to" him, the court clerk mailed a hard copy, Gonzalez could not review the transcript until December 23, 2024, four days after its entry on the docket, and thus this Court should deem the filing of the transcript to be the date that he received the transcript). Gonzalez, however, does not cite any case law or statute, nor have we discovered any, that permits this Court to consider for purposes of timeliness any date other than a document's date of entry onto the docket. Nevertheless, as we discuss above, we determine the motion for an extension itself was untimely and base our disposition on this finding.

in its Rule 1925(a) opinion. Therefore, we need not remand this matter and will proceed to review the merits of the appeal. ***See id***.

In his second issue, Gonzalez challenges the sufficiency of the evidence underlying his conviction for ICC. He argues that the temporary PFA order was unclear as to which acts were prohibited, and that the Commonwealth failed to prove he "knowingly violated the order . . . with wrongful intent." Gonzalez's Brief at 16, 20.[4]

Our standard of review when considering a challenge to the sufficiency of the evidence is well settled:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Smith***, 288 A.3d 126, 131 (Pa. Super. 2022) (citation omitted).

> A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court. Where a PFA order is involved, an indirect

_____

[4] Gonzalez also argues that the Commonwealth did not prove that he had notice of the PFA order and that there was confusion over the date of the alleged violation. However, Gonzalez failed to raise this claim in his Rule 1925(b) concise statement. Therefore, we deem this claim waived. ***See*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived").

criminal contempt charge is designed to seek punishment for violation of the protective order.

* * * *

To establish indirect criminal contempt, it must be shown that 1) the order was sufficiently clear to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act must have been one prohibited by the order; and 4) the intent of the contemnor in committing the act must have been wrongful.

*Id.* (citation omitted). "When reviewing a contempt conviction[,] we are confined to a determination of whether the facts support the trial court decision. We will reverse a trial court's determination only when there has been a plain abuse of discretion." ***Commonwealth v. Brumbaugh***, 932 A.2d 108, 111 (Pa. Super. 2007) (citation omitted).

Gonzalez argues that the temporary PFA order "was entirely unclear on what actions were prohibited" and that it did not make "**any** mention of the prohibition of public recording of another party." Gonzalez's Brief at 16 (emphasis in the original). Gonzalez claims there was "absolutely no evidence to suggest that [he] abused, harassed, stalked, threatened, or attempted . . . to use physical force against" Zelaya. *Id*. at 16-17. He avers that "[n]othing in the definition of 'contacts[,]' nor the behaviors prevented as outlined in the [PFA] order[,] prevent [him] from publicly recording [Jimenez] for the purpose of gathering evidence for himself in a subsequent PFA hearing." *Id*. at 17.

Gonzalez further contends that the Commonwealth failed to prove that he "violated the order with wrongful intent or with the purpose of violating

- 8 -

said order." *Id*. at 20. He argues that he called the sheriff's office before filming Zelaya to ensure compliance with the PFA, and that he followed and filmed Zelaya because wanted to "collect[] evidence to be used later on against" her. *Id*. at 21-22.

Addressing Gonzalez's claim that the PFA order did not prohibit him from following and filming Zelaya, the trial court reasoned:

> Although the temporary order did not specify that [Gonzalez] was not permitted to film [Zelaya], it specifically prohibited Gonzalez from having direct or indirect contact with [Zelaya]. The temporary order further prohibited [Gonzalez] from subjecting [Zelaya] to harassment. Section 6102 of the PFA, entitled "Definitions" does not include a definition of "harass." However, subsection [6102(b)] provides that "[t]erms not otherwise defined in this chapter shall have the meaning given to them in 18 Pa.C.S. (relating to crimes and offenses)." 23 Pa.C.S.A. § 6102(b). Pursuant to the Crimes Code, a person is guilty of "harassment" when, "with intent to harass, annoy or alarm another, the person follows the other person in or about a public place or places." 18 Pa.C.S.A. § 2709(a)(2).
>
> We believe Gonzalez's conduct of approaching [Zelaya], even if within 20 to 30 feet as claimed by [Gonzalez], following and filming [Zelaya] from her relative's apartment into the parking lot, and then following and filming her in a moving vehicle[,] was designed to harass, annoy and alarm [Zelaya]. The language of the temporary order sufficiently apprised [Gonzalez] that this conduct was prohibited and that engaging in such conduct would constitute a violation of that order.

Trial Court Opinion, 1/28/25, at 9-10 (unnecessary capitalization omitted and paragraph break added).

After review of the record, we determine that the record supports the trial court's finding of guilt on Gonzalez's ICC charge. *See Smith*, 288 A.3d at 131. First, the language of the temporary PFA order provided sufficient

notice to Gonzalez regarding prohibited conduct. Specifically, the order prohibited Gonzalez from "any contact," direct or indirect, with Zelaya, and explicitly ordered him not to, *inter alia*, "abuse, harass [or] stalk" her. Temporary PFA Order, 9/3/24, at 2. As the trial court explained in its opinion, Gonzalez's act of following and recording Zelaya was harassment, and the plain language of the temporary PFA order unambiguously prohibited this conduct. *See* 18 Pa.C.S.A. § 2709(a)(2). Thus, we conclude that the record supports the trial court's finding Gonzalez guilty of ICC, even though the temporary PFA order did not expressly prohibit filming.

Second, the trial court reasoned that Gonzalez did violate the temporary PFA order intentionally:

> [Gonzalez] claims that the evidence showed only that he recorded [Zelaya] in order to protect himself in the future. While we recognized that [Gonzalez] used this excuse at the hearing and acknowledged the facial validity of such a concern, we did not find that his actions were taken merely for that purpose. Instead, we specifically noted that neither [Zelaya] nor any of the others in her group initiated any contact with [Gonzalez]. We opined that [Gonzalez] should not have placed himself in proximity to [Zelaya] in this manner and that his actions were certain to annoy and/or alarm her. We found that this was the true purpose of [Gonzalez's] conduct and, for that reason, found that he had violated the temporary order.

Trial Court Opinion, 1/28/25, at 10-11 (unnecessary capitalization omitted).

Based on our review, we conclude the evidence sufficiently supports the trial court's finding that Gonzalez intentionally violated the temporary PFA order. *See Smith*, 288 A.3d at 131. Gonzalez deliberately followed Zelaya into the parking lot and recorded her on his phone. He then entered his own

- 10 -

vehicle to continue following and filming Zelaya until her vehicle turned at the end of the block. Regardless of Gonzalez's stated purpose to "collect evidence" against Zelaya, his conduct demonstrated his intent to "annoy or alarm her" in violation of the temporary PFA order. *See* N.T., 10/4/24, at 22; *see also* 18 Pa.C.S.A. § 2709(a)(2). Thus, we conclude the record supports the trial court's finding Gonzalez guilty of ICC based on this evidence. Accordingly, no relief is due on his second issue.

In his final issue, Gonzalez claims that the verdict was against the weight of the evidence, arguing that Zelaya's "testimony was incredible" and that she sought out Gonzalez "to instigate a conflict." Gonzalez's Brief at 24-25.

As a preliminary matter, we must determine whether Gonzalez preserved this issue for our review.

> [A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607. Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion.

*Commonwealth v. Thompson*, 93 A.3d 478, 490 (Pa. Super. 2014) (some citations omitted). "The fact that [an a]ppellant included an issue challenging the verdict on weight of the evidence grounds in his 1925(b) statement and the trial court addressed [his] weight claim in its Pa.R.A.P. 1925(a) opinion [does] not preserve his weight of the evidence claim for appellate review in

the absence of an earlier motion." ***Commonwealth v. Sherwood***, 982 A.2d 483, 494 (Pa. 2009).)

In the instant case, Gonzalez raises his weight claim for the first time on appeal. Gonzalez did not challenge the weight of the evidence at sentencing or in a post sentence motion. In his Rule 1925(b) statement, Gonzalez did not include "weight of the evidence" language, but raised an issue challenging the trial court's credibility determinations. Concise Statement, 1/22/25, at unnumbered 1. The trial court then addressed the merits of this issue in its opinion. However, Gonzalez's inclusion of a challenge to the weight of the evidence, for the first time in a Rule 1925(b) concise statement, did not preserve his issue, "even if the trial court addresse[d] the issue in its opinion." ***Thompson***, 93 A.3d at 490. We therefore conclude that Gonzalez failed to preserve this issue for our review and it is waived.

For the foregoing reasons, we conclude that none of Gonzalez's claims merit relief. We thus affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/15/2026