J-S46014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL MALLORY | : | |
| | : | |
| Appellant | : | No. 830 WDA 2025 |

Appeal from the Judgment of Sentence Entered June 6, 2025
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-MD-0000878-2025

BEFORE:  BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY BOWES, J.:                    **FILED: APRIL 27, 2026**

Michael Mallory appeals from the judgment of sentence of three months of probation imposed after a trial court convicted him of indirect criminal contempt ("ICC") for violating a protective order entered pursuant to the Protection From Abuse Act ("the Act").  In this Court, Rose A. Semple, Esquire, has applied to withdraw as Appellant's counsel and filed a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We grant counsel's application to withdraw and affirm the judgment of sentence.

During the trial in this matter, Daijai Smith testified that on January 5, 2022, she obtained a final PFA order against Appellant which prohibited him from having contact with her for three years and from possessing a firearm

during that period.[1]  Appellant was served with a copy of the final PFA order by mail the following day.

Shortly after midnight on April 27, 2024, Ms. Smith accompanied several friends to a private social club located in the 100 block of North Main Street, Washington, Pennsylvania.  The establishment was operated by a motorcycle club that she had been closely associated with prior to meeting Appellant, who on the evening in question was a prospective member assigned to the club's door.  Ms. Smith testified that she had introduced Appellant to the motorcycle club.  She explained, "he wasn't doing the [motorcycle club] stuff until he heard that I was going [there]."  N.T., 6/6/25, at 15.

Upon her arrival at the social club, Appellant barred Ms. Smith's entry and threatened both to assault her physically and kill her.  She recalled, "He said he was going to put his hands on me.  He was going to pay somebody to put their hands on me.  He kept on talking about he was going to kill me[.]"  *Id*. at 9.  Specifically, Appellant threatened, "You stupid bitch.  I am going to kill you."  *Id*. at 11.  Ms. Smith retreated to the safety of her friend's vehicle and called both the club's president, who verified that she was permitted to enter the establishment, and her sister.  While she was in the car, Appellant briefly accessed the building to retrieve a black bag, got in a nearby automobile, approached Ms. Smith's vehicle, and brandished a firearm.  *Id*.

---

[1] The PFA refers to Daijai Ramesy, her prior married name.

at 9-10. She described the latter behavior as Appellant "waving a gun in his hand, screaming and yelling." *Id*. at 10.

Frightened by the ordeal, Ms. Smith reported the incident to the Washington Police Department, who eventually escorted her home. As a result of the above incident, Appellant was charged with ICC. *See* 23 Pa.C.S. § 6114(a) ("Where the police . . . have filed charges of indirect criminal contempt against a defendant for violation of a [PFA] order . . ., the court may hold the defendant in indirect criminal contempt and punish the defendant in accordance with law.").

Following a bench trial, the trial court convicted Appellant of ICC and immediately imposed a $300 fine and term of probation stated above. Appellant did not file a post-sentence motion, nor request that the court reconsider or modify the sentence. Rather, he pursued this timely appeal. In response to the trial court's order to comply with Pa.R.A.P. 1925, counsel filed a Rule 1925(c)(4) statement of intent to withdraw from representation. Thus, the trial court did not file a formal Rule 1925 opinion.

In this Court, counsel filed both an *Anders* brief and a petition to withdraw as counsel. We must address this threshold matter before proceeding to the merits of the appeal. *See Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa.Super. 2005) ("When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.") (citation and quotation marks omitted).

Counsel must adhere to the following requirements to withdraw pursuant to the *Anders* procedure:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*) (citation omitted). Counsel must also provide a copy of a letter advising the appellant of his or her rights before this Court. *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa.Super. 2005).

Our Supreme Court has directed that *Anders* briefs comply with the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

In the instant matter, counsel avers in her petition to withdraw that she has determined, after a conscientious examination of the record, that Appellant's appeal is wholly frivolous. Counsel certified that she mailed a copy

- 4 -

of her petition and her **Anders** brief to Appellant. Additionally, counsel eventually filed a copy of the **Millisock** letter she mailed to Appellant explaining Appellant's rights and informing him that he may retain new counsel or proceed *pro se* and raise any additional arguments he deems worthy of our attention.[2] The **Anders** brief includes a summary of the facts and procedural history of this case, a list of issues that could arguably support the appeal, and counsel's assessment of why those issues are frivolous, with citations to the record and relevant legal authority. Counsel has, therefore, complied with the requirements of the **Anders** procedure, and we may review the issues that she outlined in her brief. Accordingly, we proceed with an independent examination of the record to discern if any non-frivolous issues exist.[3] **Commonwealth v. Dempster**, 187 A.3d 266, 273 (Pa.Super. 2018) (*en banc*).

Counsel's **Anders** brief identifies the following claim: " Are there any issues that Appellant could raise on appeal that are not wholly frivolous?" **Anders** brief at 7. Though stated as a single issue, counsel presents potential challenges to the: (1) sufficiency of the evidence presented at trial; (2)

---

[2] Counsel initially neglected to attach the **Millisock** letter to her petition to withdraw, but she complied with our October 23, 2025 directive to file in this Court a copy of the letter notifying Appellant of his appellate rights. Thereafter, counsel filed with this Court a revised **Millisock** letter more accurately advising Appellant of his right to proceed *pro se* or with privately appointed counsel.

[3] Appellant did not file a response to counsel's petition.

discretionary aspects of sentence; (3) legality of sentence; and (4) trial court's jurisdiction. *Id*. at 11-14.

As Appellant would be subject to discharge if he prevailed on a claim that the Commonwealth failed to present sufficient evidence to sustain the ICC conviction, we address that issue first. The following principles are pertinent.

> Our standard of review is whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to enable the fact-finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt.
>
> In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Pledger*, 332 A.3d 29, 34 (Pa.Super. 2024) (cleaned up) (citations omitted).

To establish ICC in relation to a violation of a protective order, the following must be proven: "1) the order was sufficiently clear to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act must have been one prohibited by the order; and 4) the intent of the contemnor in committing the act must have been wrongful."

*Commonwealth v. Smith*, 288 A.3d 126, 131 (Pa.Super. 2022) (cleaned up). As outlined *infra*, the Commonwealth presented sufficient evidence to sustain the ICC conviction.

The Commonwealth established all the forgoing elements of ICC beyond a reasonable doubt. First it introduced the January 5, 2022 PFA order that specifically prohibited Appellant from (1) harassing Ms. Smith or threatening "to use physical force against [her] in anyplace where [she] might be found" and (2) "possessing or acquiring any firearms for the duration of [the] order.'" N.T., 6/6/26, at 6 Exhibit 1 (Final PFA Order, 1/5/22, at 2). Next, the Commonwealth established that Appellant received notice of the no-contact order and nevertheless used his position as the club's door man to berate Ms. Smith, threaten her, and menace her with a firearm. *Id* at 5-6, 9-11. Lastly, while Appellant was working at the door of the club when Ms. Smith arrived, his volition and wrongful intent to violate the PFA order can be imputed in that he did not retreat from his post or simply let Ms. Smith pass into the building without incident. *See Shaner v. Harriman*, 189 A.3d 1088, 1092 (Pa.Super. 2018) ("Wrongful intent can be imputed by virtue of the substantial certainty that by choosing an action, the defendant would know he would be in violation of the PFA Order."). Rather than avoiding an altercation with Ms. Smith, Appellant barred her entry, berated her, and even after she retreated to the relative safety of an automobile, he brandished a firearm and approached her in a threatening manner, "waving a gun in his hand,

screaming and yelling." *Id*. at 10. Viewing the facts in the light most favorable to the Commonwealth, the evidence is sufficient to establish that Appellant committed ICC in violating the PFA order.

Next, as it relates to any potential claim implicating the discretionary aspect of Appellant's sentence, that issue is waived because he failed to raise it at sentencing or in a post-sentence motion. *See Commonwealth v. Oglesby*, ___ A.3d ___, 2026 WL 847717, at *6 (Pa.Super. Mar. 27, 2026) ("Generally, an appellate court cannot review an issue that the appellant did not raise and preserve before the trial court."); *see also* Pa.R.A.P. 302 ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

As counsel's *Anders* brief also highlights, any potential challenge to the legality of sentence is futile. A sentence that exceeds the court's statutory authority to impose it is illegal and must be vacated. *Commonwealth v. Lee*, 260 A.3d 208, 211 (Pa.Super. 2021). "Issues relating to the legality of a sentence are questions of law [and] [a]s with all questions of law on appeal, our standard of review is *de novo* and our scope of review is plenary." *Id*. (internal citations and quotations omitted). Pursuant to the Act, the maximum fine and term of supervised probation are $300 and six months, respectively. *See* 23 Pa.C.S. § 6114(b)(1). The statute also grants the PFA court authority to impose "an order for other relief set forth in [the Act]". *Id*. Instantly, the court imposed three months of probation and a $300 fine. In addition, the

court ordered Appellant to complete counseling, avoid contact with Ms. Smith, and not possess a firearm, three directives inherent to the court's authority to impose conditions in awarding relief. **See** 23 Pa.C.S. § 6108(a)(6), (7), and (10). As the PFA court fashioned a sentence that was wholly within its statutory authority, the sentence is not illegal.

Similarly, in relation to the issue of jurisdiction, counsel points out that the trial court had jurisdiction over the ICC charges stemming from the violation of the PFA order. As jurisdiction involves a purely legal question, again, our standard of review is *de novo*.

This Court previously explained that "[s]ubject matter jurisdiction speaks to the competency of a court to hear and adjudicate the type of controversy presented." **Commonwealth v. Elia**, 83 A.3d 254, 265 (Pa.Super. 2013). We further observed, "[c]ontroversies stemming from violations of the Crimes Code are entrusted to the original jurisdiction of the courts of common pleas for resolution [and a]ll jurists within that tier of the unified judicial system are competent to hear and resolve a matter arising out of the Crimes Code. **Id**. (citations omitted). Indeed, pursuant to the PFA Act, "[a] Court shall have jurisdiction over indirect criminal contempt charges for violation of a protection order . . . in the county where the violation occurred and in the county where the protection order was granted." 23 Pa.C.S. § 6114(a.1).

Here, the Court of Common Pleas of Washington County had jurisdiction over the ICC charges pursuant to § 6114(a.1) both because that court issued the PFA order and because Appellant violated that order in Washington County. *See id*. Accordingly, any challenge to the court's jurisdiction over this matter is meritless.

For all the forgoing reasons, we concur with counsel's legal assessment as to all points raised in the ***Anders*** brief. Our obligation to conduct a "simple review of the record to ascertain if there appear[s] on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated[,]" has revealed no additional matters that counsel failed to address. ***See Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa.Super. 2018) (*en banc*). Accordingly, we grant Attorney Semple's petition to withdraw and affirm Appellant's judgment of sentence.

Petition of Rose A. Semple, Esquire, to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 4/27/2026

- 10 -